# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## 5:26-cv-00008-MR-MTO

| | |
|---|---|
| RAJAI STRICKLAND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| ) | |
| FNU HANNER, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on its review of the docket in this

matter and on Defendants' Motion to Dismiss [Doc. 24].

## I.    BACKGROUND

On January 12, 2026, pro se Plaintiff Rajai Strickland ("Plaintiff") filed

this lawsuit pursuant to 42 U.S.C. § 1983 by unverified Complaint against

three prison officials, FNUs Hanner, Panero, and Sigmon, and the North

Carolina Department of Adult Correction (NCDAC).[1]  [Doc. 1].  Plaintiff's

Eighth Amendment excessive force claims against Defendants Hanner and

Panero survived initial review.  Plaintiff's remaining claims and the remaining

---

[1] At the time he filed the Complaint, Plaintiff was a prisoner of the State of North Carolina
incarcerated at the Maury Correctional Institution in Hookerton, North Carolina.  [Doc. 1
at 7].  Plaintiff was released from state custody on March 4, 2026.  [Doc. 16].

Defendants were dismissed.  [Doc. 6].  On March 16, 2026, Plaintiff notified the Court that he had been released from custody and provided his new address at 9212 Arbourgate Meadows Lane, Charlotte, North Carolina. [Doc. 16].

Two days later, on March 18, 2026, the Court received another address change notice from the Plaintiff.  He advised that he had returned to Mecklenburg County Detention Center (MCDC) and provided a new mailing address at a P.O. Box in Phoenix, Maryland.[2]  [Doc. 17].  On April 2, 2026, Plaintiff again provided another new address to the Court, which is the physical address of the MCDC at 700 East 4th Street, Charlotte, North Carolina, which the Court understands to be the proper address for legal mail at the Jail.  [Doc. 19].

On May 19, 2026, Defendants filed the pending motion to dismiss, arguing that Plaintiff failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), before filing this action.  [Docs. 24, 25].  The next day, this Court entered an order, in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendants' motion and cautioning

---

[2] The P.O. Box address provided by the Plaintiff is known to the Court as the address for the Jail's centralized mail processing hub for non-legal mail.

2

him that his failure to respond would likely result in Defendants being granted dismissal of Plaintiff's Complaint. [Doc. 26]. The Court ordered that Plaintiff had thirty (30) days from entry of the Roseboro Order to respond. [Id. at 2].

On June 26, 2026, the Court's Roseboro Order, which was mailed to Plaintiff at his address of record, was returned undelivered. [Doc. 27]. The same day, the Clerk consulted the Mecklenburg County Sheriff's Office (MCSO) website and learned that the Plaintiff had been released from their custody on May 20, 2026. [6/26/2026 (Court Only) Docket Entry].

On July 6, 2026, the Clerk learned through the MCSO website that Plaintiff had been returned to custody at the MCDC on July 2, 2026. [7/6/2026 (Court Only) Docket Entry]. The same day, the Clerk entered a Notice instructing the Plaintiff that he must notify the Clerk of any changes to his address within fourteen (14) days of the Notice and that the failure to do so may result in the dismissal of this action. [11/10/2025 Text-Only Notice]. The Clerk also remailed Plaintiff a copy of the Roseboro Order at that time. The deadlines to respond to Defendants' motion to dismiss and to notify the Court of his new address have passed. Plaintiff has not responded to Defendants' motion or notified the Court of his new address.

## II.     DISCUSSION

### A.     Failure to Prosecute

Plaintiffs have a general duty to prosecute their cases. In this regard, a pro se plaintiff must keep the Court apprised of his current address. <u>See Carey v. King</u>, 856 F.2d 1439, 1441 (9th Cir. 1988) ("A party, not the district court, bears the burden of keeping the court apprised of any changes in his mailing address."). Where a pro se plaintiff has failed to notify the Court of his change of address, the action is subject to dismissal without prejudice for failure to prosecute. <u>Accord</u> <u>Walker v. Moak</u>, Civil Action No. 07-7738, 2008 WL 4722386 (E.D. La. Oct. 22, 2008) (dismissing without prejudice a § 1983 action for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure where the plaintiff did not notify the court of his new address upon his release from jail).

Because Plaintiff failed to comply with the Court's deadline to notify it of his new address, the Court will dismiss this action without prejudice for Plaintiff's failure to prosecute.

### B.     Defendants' Motion to Dismiss

The PLRA requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in

4

pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life. 534 U.S. 516, 532 (2002). The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory." Id. at 524 (citation omitted). The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice. Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law . . . requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). Because exhaustion of

administrative remedies is an affirmative defense, Defendants have the burden of pleading and proving lack of exhaustion. Id. at 216.

It is well-settled that a prisoner may not exhaust his administrative remedies during the pendency of a Section 1983 action; rather, he must fully exhaust all steps of the administrative process before filing his lawsuit. See Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011). The NCDAC has established, in its Administrative Remedies Procedures (ARP), a three-step procedure governing submission and review of inmate grievances. See Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). Inmates are required to exhaust administrative remedies with the NCDAC in accordance with ARP. Id. An inmate does not exhaust his administrative remedies with the NCDAC until he completes all three steps. Id.

Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. Plaintiff, however, must show that administrative remedies were not available. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011); Stohl v. Eastern Reg'l Jail, No. 1:14-cv-109, 2015 WL 5304135, at *7 (N.D.W. Va. Sep. 8, 2015) (granting defendants' motion to dismiss and refusing to credit conclusory allegation that grievances were discarded where such allegation

6

"not only is unsupported by any of the evidence in the record, but is belied" by documentary evidence showing plaintiff successfully filed other grievances during the same time period).

Here, in his unverified Complaint, Plaintiff denied having sought administrative relief related to the actions complained of in his Complaint. [Doc. 1 at 6]. He also alleged, however, that he was attaching a copy of "Grievance Response #3" to his Complaint. [Id. at 4]. No such copy was attached. [See Doc. 1].

In support of their motion to dismiss, Defendants submitted a brief, a Declaration of Counsel, a copy of the NCDAC ARP, a copy of Plaintiff's three (3) fully exhausted grievances submitted from January 2025 to the present, Plaintiff's Correspondence Tracking System (CTS), and a copy of Plaintiff's unexhausted August 9, 2025 grievance complaining about, among other things, the subject use of force. [Docs. 25, 25-1 to 25-6]. See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may also consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic."); see also Doc. 25-2 at ¶¶ 2-5: Dec. of Counsel (attesting to authenticity of grievance and other records).

Defendants have shown that Plaintiff did not exhaust his administrative remedies relative to the facts giving rise to this cause of action before Plaintiff filed his Complaint. The records show that Plaintiff submitted a 13-page grievance on August 9, 2025, setting out in detail alleged events from two days before, some of which are the subject of the instant Complaint. [Doc. 25-6 at 3-15]. That grievance was rejected at screening pursuant to ARP Section .0300 for complaining about more than one incident. [Doc. 25-6 at 2]. Plaintiff did not refile a proper grievance in compliance with the ARP regarding the subject incident. See Woodford, 548 U.S. at 83-84 (filing an untimely or otherwise procedurally defective grievance or appeal is insufficient; proper exhaustion is required). Rather, he did not file his next grievance, which is described below, until October 5, 2025. [See Doc. 25-4 at 11].

Furthermore, none of the three exhausted grievances relate to the matters at issue. [See Doc. 25-4 at 2-15]. That is, on July 17, 2025, Plaintiff complained about needing a tooth pulled; on July 29, 2025, Plaintiff complained that his housing assignment did not accommodate his medical

condition; and on October 5, 2025, Plaintiff complained about his I-CON status and mental health.[3]  [Id. at 3, 7, 11].

As noted, Plaintiff did not respond to Defendants' motion to dismiss despite the Court's express instructions of his right to do so and the consequences for not responding.  Moreover, Plaintiff has not shown that administrative remedies were not available to him thereby excusing the exhaustion requirement.  See Moore, 517 F.3d at 725; Graham, 413 Fed. App'x at 663.

For these reasons, the Court must also dismiss this action without prejudice for Plaintiff's failure to exhaust his administrative remedies.  See Harris v. Midford, No. 1:10-cv-263, 2011 WL 1601446 (W.D.N.C. Apr. 27, 2011).  The Court will, therefore, grant Defendants' motion to dismiss.

## **ORDER**

**IT IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss [Doc. 24] is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITHOUT PREJUDICE** in accordance with the terms of this Order.

---

[3] In the October 5, 2025 grievance, Plaintiff offhandedly mentioned that he "[had] been filling out grievances addressing [the I-CON status and other issues] like how [he] was assaulted August 7th 2025 … and [hadn't] had any replied to."  [Doc. 25-4].  The alleged August 7, 2025 assault, however, was not the subject of the grievance

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.          Signed: August 3, 2026

Martin Reidinger
Chief United States District Judge